## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION - DETROIT

**IN THE MATTER OF:**

Eton Street Brewery, LLC

Debtor.

Bankruptcy Case No. 24-47188

Judge Mark A. Randon

Chapter 11

## MOTION TO DISMISS, OR ALTERNATIVELY, ABSTAIN FROM ALL PROCEEDINGS IN THIS CASE AND TERMINATE THE AUTOMATIC STAY AND WAIVE THE STAY PROVIDED IN FED. R. BANKR. P. 4001(a)(3), OR ALTERNATIVELY, TO TERMINATE THE AUTOMATIC STAY AND WAIVE THE STAY PROVIDED IN FED. R. BANKR. P. 4001(a)(3)

NOW COME the Mary E. Nicholson Trust u/a/d January 14, 1994 and the Michael Nicholson Trust u/a/d March 17, 1997 (collectively, the "Trusts"), by and through their counsel, Stevenson & Bullock, P.L.C., and for their Motion to Dismiss, or Alternatively, Abstain from All Proceedings in this Case and Terminate the Automatic Stay and Waive the Stay Provided in Fed. R. Bankr. P. 4001(a)(3), or Alternatively, to Terminate the Automatic Stay and Waive the Stay Provided in Fed. R. Bankr. P. 4001(a)(3) (the "Motion") state:

## I.    Preliminary Statement

This bankruptcy case was filed for an improper purpose, without requisite corporate authority, is contrary to the spirit and purpose of the Bankruptcy Code, and must be dismissed.  Through this Motion, the Trusts assert ample cause and legal

1

authority for the Court to dismiss the instant bankruptcy case, or, alternatively, suspend proceedings and terminate the automatic stay.

After significant litigation was well underway between the Trusts and Nicholson family on one side and the LePage family on the other in Oakland County Circuit Court, Business Court division (the "<u>Business Court</u>") with dispositive relief under advisement, the LePage family ran to this Court to seek the refuge of a change of venue. In so doing, they filed the instant bankruptcy case in bad faith and without requisite corporate authority. To make matters worse, they concocted a strategy to sell the Debtor's valuable and admittedly profitable enterprise to other members of the LePage family to the detriment of the Trusts and Nicholson family.

This is a debtor who is forum shopping and seeking to evade litigation in the Business Court for which the Trusts' motion for summary disposition has been fully briefed. Additionally, in violation of applicable precedent, the Debtor seeks to sell itself to an insider not to protect the value of an oft-seen "melting ice cube" but rather to divert the business to the LePage family outside of the unanimity that would otherwise be required. Notably, only after objections were raised by the Trusts to the LePage family seeking broad releases vis-à-vis a proposed purchase agreement, was such a request withdrawn.

The Debtor's financial problem is wholly comprised of the dispute between the Debtor and the Trusts, which can and should be resolved in the pending State

Court Litigation. The Debtor has proffered no discussion about its need to reorganize, only the desire to liquidate assets in a way that thwarts the pending litigation and unfairly prejudices the Trusts. The Debtor's present financial status weighs in favor of dismissal, as it does not exhibit financial distress or the need to reorganize.

## II.  Jurisdiction and Venue

1.   This Court has jurisdiction over the bankruptcy case pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.   Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.   The relief sought herein is based on 11 U.S.C. §§ 105(a), 305(a)(1), 362(d), 1112(b), and 28 U.S.C. §§ 1334(b) and (c).

## III.  Background and Facts

4.   On January 17, 2023, the Trusts filed a multi-count complaint (the "Complaint") in Oakland County Circuit Court, Business Court division against the Debtor (and others) (the "State Court Litigation"). (**Exhibit A**)

5.   On February 14, 2024, after the case had been pending for more than one year, the Trusts filed a motion in the State Court Litigation seeking a dispositive ruling requesting Judgment on Debtor's $8 Million Dollar Promissory Note obligation (the "Motion for Partial Summary Disposition").

3

6. The Business Court entered a scheduling order that set a deadline of July 10, 2024 for responses to the Motion for Partial Summary Disposition.

7. Debtor filed a response to the Motion for Partial Summary Disposition on or around July 9, 2024, approximately two weeks before it filed the bankruptcy case.

8. The Trusts filed a reply to Debtor's response on or around July 17, 2024.

9. Thereafter, the Motion for Partial Summary Disposition was taken under advisement by the Business Court. Upon information and belief, the Business Court does not schedule a hearing as a matter of course, and many motions are indeed decided without a hearing.

10. Days later, on July 26, 2024, on the eve of the Business Court's ruling on the Trusts' Motion for Summary Disposition requesting Judgment on Debtors $8 Million Dollar Promissory Note obligation, the Debtor filed its voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code (the "Bankruptcy Case").

11. Concurrent with the filing of the Bankruptcy Case, Debtor, through "Managing Partner" Scott LePage, made comments to the media to assure employees, vendors, and the public that "it's business as usual" for the "profitable company" and that the Bankruptcy Case was filed for the purpose of addressing a

4

two-party                    dispute.                    DetroitNews.com,

https://www.detroitnews.com/story/entertainment/dining/2024/07/26/griffin-claw-

brewing-co-files-chapter-11-bankruptcy-business-operations-not-

affected/74563425007/, retrieved August 8, 2024 (**Exhibit B**).  In less than two

weeks, the comments were picked up by tens of other media outlets.

12.    Also concurrent with the filing of the Bankruptcy Case, the Debtor filed

other pleadings with this Court that are instrumental in evaluating and understanding

the Debtor's purpose for the Bankruptcy Case.  Namely, the obvious intent to subvert

the potential negative outcome of the State Court Litigation and sell its assets free

and clear of the claims of the Trusts and the Nicholson family while retaining the

Debtor's assets and going concern value for the LePage family.

13.    On August 9, 2024, the Debtor filed its Schedules (doc. no. 8) and

Statement of Financial Affairs (doc. no. 9) with this Court.  These documents are

further evidence of the Debtor's improper purpose in filing the Bankruptcy Case and

bad faith.

14.    *Inter alia*, the Debtor has dramatically and unjustifiably understated the

value of its assets.  By way of example, the Debtor valued "Kegs" at $214.99 on

Schedule A/B (doc. no. 68, page 5 of 23) (**Exhibit C**), but $1,001,705.52 on its

balance sheet dated March 31, 2024 (the "Balance Sheet") (doc. no. 7, page 2)

(**Exhibit D**), machinery and equipment in its Rochester Hills location at $6,1024.28

on its Schedule A/B, but $2,735,491.96 on its Balance Sheet, and machinery and equipment in its Birmingham location at $47,806.73 on its Schedule A/B but $6,629,697.14 on its Balance Sheet.

15.     The Debtor has also made payments to insiders of nearly $31,000.00 per month in the months leading up to the Bankruptcy Case totaling in excess of $1.9 million.

## IV.     Relief Requested

16.     The Trusts seek (I) dismissal of the Bankruptcy Case under 11 U.S.C. § 305(a)(1) and/or § 1112(b), for cause, or in the alternative, (II) abstention of the Bankruptcy Case under 11 U.S.C. § 305(a)(1) and/or 28 U.S.C. § 1334 and termination of the automatic stay to allow the Trusts to continue their advanced-stage litigation in Business Court, or in the alternative, (III) termination of the automatic stay to allow the Trusts to continue their advanced-stage litigation in Business Court.

## V.     Bases for Relief

### A.     Dismissal
**(1)     Dismissal of the Bankruptcy Case under 11 U.S.C. § 305(a)(1) is warranted and appropriate.**

17.     Section 305(a)(1) of Title 11, United States Code provides for the dismissal of a case "if the interests of creditors and the debtor would be better served by such dismissal…."

6

18.     "The decision to dismiss under § 305 is discretionary, and must be made on a case-by-case basis." *In re Packard Square, LLC*, 586 B.R. 853, 865 (E.D. Mich. 2018)(citation omitted).

19.     Courts have considered a variety of factors in evaluating whether to dismiss a case under § 305(a)(1), including, but not limited to,

   (a) who filed the bankruptcy petition;
   (b) the availability of another forum to resolve the pending disputes;
   (c) the necessity of federal proceedings to achieve a just and equitable solution;
   (d) the expense of the federal proceedings in comparison with the proceedings in another forum;
   (e) the purpose of the party seeking to remain in bankruptcy court,
   (f) the economy and efficiency of having the bankruptcy court handle the matter; and
   (g) the possible prejudice to various parties.

*In re Fortran Printing, Inc.*, 297 B.R. 89, 94 (Bankr. N.D. Ohio 2003) (citation omitted).

20.     Other courts have identified the following factors:

   (a) economy and efficiency of administration;
   (b) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court;
   (c) whether federal proceedings are necessary to reach a just and equitable solution;
   (d) whether there is an alternative means of achieving an equitable distribution of assets;
   (e) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;

7

(f) whether a non-federal insolvency has proceeded so far in those proceeding that it would be costly and time consuming to start afresh with the federal bankruptcy process;

(g) the purpose for which bankruptcy jurisdiction is sought; and

(h) the effect that a bankruptcy proceeding will have on the debtor's ongoing business.

*In re Dzierzawski*, 528 B.R. 397, 406 (Bankr. E.D. Mich. 2015)(J. Tucker)(citation omitted).

21.     The factors are intended to be instructive and courts "should be guided by the unique facts of the case and look only to the factors or criteria particularly relevant and applicable in the case under consideration." *Packard Square*, 586 B.R. at 866 (citation omitted).

22.     Application of the relevant and applicable factors leads to the conclusion that the case must be dismissed.

23.     It is undeniable that the status of the pre-petition State Court Litigation raising only issues of state law, commenced by the Trusts on January 17, 2023 against Debtor and related entities, led the Debtor to file the Bankruptcy Case.

24.     The timing of the Bankruptcy Case evidences an intent to delay or frustrate the legitimate efforts of the Trusts to enforce their rights.

25.     On February 14, 2024, the Trusts filed a motion in the State Court Litigation seeking a dispositive ruling, in part (the "Motion for Partial Summary Disposition").

26.     The Debtor's response to the Motion for Partial Summary Disposition

8

was due July 10, 2024, two weeks before it filed the Bankruptcy Case. Dispositive relief was under advisement at the time the Debtor filed the Bankruptcy Case.

27.     Thus, there is another forum in which to resolve the disputes between the Debtor and the Trusts, and litigation had been ongoing in that forum for more than a year and a half.

28.     The Complaint filed in the State Court Litigation includes the following counts against the Debtor: (I) Declaratory Judgment determining that Debtor improperly added a member to Debtor in contravention of the Michigan Limited Liability Act, MCL 450.1401, *et seq.* and thus the improperly added "member" has no interest in the Debtor; (II) Accounting / Access to Records / Inspection of Records based on the Operating Agreement and Michigan Limited Liability Act, MCL 450.1401, *et seq.*; (III) Appointment of a Receiver, relief that is not available under the Bankruptcy Code; (IV) Breach of Contract; and (V) Unjust Enrichment. All of these counts are based on state law only; none requires federal proceedings for a "just and equitable solution."

29.     Another forum, specifically, the Business Court, is not only available to resolve the disputes of the Debtor and the Trusts, but has been engaged in doing so for more than one and a half years.

30.     The purpose of the Debtor entering into and remaining in Bankruptcy Court is to circumvent an adverse ruling in the State Court Litigation and attempt to

ratify its proposed insider purchase of the Debtor for an artificially deflated purchase price. It has been widely reported that the Debtor "is not facing financial distress, and thus is not seeking a liquidation or restructuring of its financial situation." TheStreet.com, https://www.thestreet.com/retail/popular-craft-brewery-files-chapter-11-bankruptcy-for-an-unusual-reason, retrieved August 8, 2024 (**Exhibit E**). Indeed, the Debtor, through "Managing Partner" Scott LePage, has commented to media outlets that "the business is profitable." See **Exhibit B**, DetroitNews.com article.

31.     The expense of the Bankruptcy Case will far outpace the expense of continuing in state court. The Bankruptcy Case now involves a trustee who will be compensated by the Debtor, Bankruptcy Counsel, who is providing services unnecessary in the State Court Litigation, in part, and duplicative of services already provided in the State Court Litigation, and a financial advisor who is providing unnecessary assistance for such a profitable enterprise.

32.     Moreover, the Trusts can be expected to continue to contest the use of this Bankruptcy Case as inappropriate and an abuse of the spirit and purpose of the Bankruptcy Code.

33.     While the Bankruptcy Case would ordinarily be expected to have a negative impact on business operations, Debtor's comments to the media run completely contrary.

10

34.     The dismissal of the Bankruptcy Case would be in the best interests of the Debtor and its creditors.  The Debtor would preserve its resources and not suffer the negative effects of a bankruptcy, the Debtor's creditors would not be disrupted by the Bankruptcy Case or impacted by the attendant uncertainty, and the litigation commenced by the Trusts one and a half years ago would continue without the Trusts having to duplicate efforts in the State Court Litigation (currently stayed as to the Debtor, but not other defendants) and the Bankruptcy Case.

35.     Acknowledging that relief under § 305(a) is regarded as "extraordinary,"[1] this Bankruptcy Case warrants such relief.  At its core, the Bankruptcy Case is a two-party dispute between the LePage family and the Trusts—a two-party dispute that does not belong in bankruptcy court.  *Dzierzawski*, 528 B.R. at 406  ("Dismissal or suspension of a case may be appropriate when the bankruptcy case constitutes a two-party dispute between the debtor and a single creditor,"  citing 2 *Collier on Bankruptcy* ¶ 305.02[d], at 305-9.); *In re TGP Communications, LLC*, 2024 WL 3548248, *5 (Bankr. S.D. Fla.)(July 25, 2024)("Abstention or dismissal makes sense where a debtor attempts to circumvent the Bankruptcy Code 'by doing indirectly what cannot be done directly,' including filing bankruptcy purely as a

---

[1] *Packard Square*, 586 B.R. at 866 ("Granting relief under § 305(a) is considered 'an extraordinary remedy, in part because it is generally not appealable beyond the level of the District Court,'") quoting *In re Orchards Village Investments, LLC*, 405 B.R. 341, 351 (Bankr. D. Oregon 2009).

litigation strategy", citing *In re First Fin. Enters., Inc.*, 99 B.R. 751, 754 (Bankr. W.D. Tex. 1989)); *In re TGP Communications, LLC*, 2024 WL 3548248, *5 (Bankr. S.D. Fla.)(July 25, 2024) ("Courts may likewise permit abstention or dismissal under § 305(a) when litigation is already well underway in another forum and that forum is available to determine the parties' interests," citing *Passavant Mem'l Homes v. Laurel Highlands Foundation, Inc. (In re Laurel Highlands Foundation, Inc.)*, 473 B.R. 641, 654 (Bankr. W.D. Pa. 2012)).

36.     This Court must dismiss this case under § 305(a)(1).

### (2)     11 U.S.C. § 1112 dismissal

37.     Implicit in any good faith analysis is the question of whether the bankruptcy filing masks other, less savory, aims.  In addition to advancing valid bankruptcy purpose, courts consider whether the debtor filed a bankruptcy case merely to obtain a tactical advantage.

38.     Section 1112(b) lists grounds upon which a party in interest may object to a bankruptcy filing and request dismissal of the case.  Indeed, § 1112 provides, in pertinent part:

> (b) (1)Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

> ***

12

(4)For purposes of this subsection, the term "cause" includes—
> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
> (B) gross mismanagement of the estate;
> (C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;
> (D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;
> (E) failure to comply with an order of the court;
> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
> (G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;
> (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);
> (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief; and
> (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court.

### (a) The case should be dismissed because it was filed without requisite authority.

39. While § 1112(b) does not include the issue of corporate authority, the list is nonexclusive. *See*, *In re Consolidated Auto Recyclers, Inc.*, 123 B.R. 130, 137 n.41 (Bankr. D. Me. 1991) (*citing In re Alves Photo Serv., Inc.*, 6 B.R. 690, 694 (Bankr. D. Mass. 1980)); *see also In re Gucci*, 174 B.R. 401, 403 (Bankr. S.D.N.Y. 1994) (stating the bankruptcy court is not limited to the ten, non-exhaustive enumerated grounds in Rule 1112(b)).

40. The Court need not rely on a provision of the Code for authority to dismiss a bankruptcy case that was not properly authorized by the Debtor. *In re Comscape Telecommunications, Inc.*, 423 B.R. 816, 830 (Bankr. S.D. Ohio 2010) (dismissing chapter 11 case). "Whenever a court finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, **it has no alternative but to dismiss the petition**.'" *Id.* (*quoting Price v. Gurney,* 324 U.S. 100, 106 (1945) (emphasis added).

41. "Commencement of a case under the Bankruptcy Code is a specific act requiring specific authorization." *Comscape* at 830 (internal quotation marks omitted) (*quoting In re N2N Commerce, Inc.*, 405 B.R. 34, 41 (Bankr. D. Mass. 2009) (dismissing chapter 11 case filed without proper corporate authority) (*see also, In re Jr. Food Mart*, 1997 Bankr. LEXIS 385, 10-11 (Bankr. D. Ark. 1997) and *In re Arkco Leasing*, 1997 Bankr. LEXIS 383, 10-11 (Bankr. D. Ark. 1997)). State law governs the determination of who has the authority to file a bankruptcy petition on behalf of another. *In re Buda*, 252 B.R. 125, 128 (Bankr. E.D. Tenn. 2000) (*citing, Wieczorek v. Woldt (In re Kjellsen)*, 53 F.3d 944, 946 (8th Cir. 1995) (regarding a Chapter 13 petition filed on behalf of an individual); *Keenihan v. Heritage Press, Inc.*, 19 F.3d 1255, 1258 (8th Cir. 1994) (regarding a Chapter 11 petition filed on behalf of a corporation) (*citing Price v. Gurney*, 324 U.S. 100 (1945)); *In re American Globus Corp.*, 195 B.R. 263, 265 (Bankr. S.D.N.Y. 1996) (regarding a

14

Chapter 11 petition filed on behalf of a corporation). Thus, "as creatures of state law, LLCs are governed by state law and the terms of the organizational documents and operating agreements, and that the same control the question of whether the filing was authorized." *In re Real Homes, LLC,* 352 B.R. 221, 226 (Bankr. D. Idaho 2005).

42.     In this instance, the Debtor was formed under Michigan law and is therefore governed by the Michigan Limited Liability Company Act, MCL § 450.4101, *et. seq.* (the "LLC Act"). The LLC Act provides:

> Unless otherwise provided in an operating agreement, the sale, exchange, lease, or other transfer of all or substantially all of the assets of a limited liability company, other than in the ordinary course of business, may be authorized only by a vote of the members entitled to vote.

MCL § 450.4502(6)

43.     Section 6.3 of the First Amended Operating Agreement (attached hereto as **Exhibit F**) requires unanimous consent of all members of the Debtor with respect to "(1) any significant and material purchase, receipt, lease, exchange, or other acquisition of any real or personal property or business; **(2) the sale of all or substantially all of the assets and property of the Company;** (3) any mortgage, grant of security interest, pledge, or encumbrance on all or substantially all of the assets and property of the Company; (4) any merger; (5) any amendment or restatement of the Articles or this Operating Agreement; **(6) any matter that could result in a change in the amount or character of the Company's capital; (7) any**

15

**change in the character of the business and affairs of the Company**; (8) the commission of any act that would make it impossible for the Company to carry on its ordinary business and affairs; or (9) any act that would contravene any provision of the Articles, Operating Agreement, or the Act." (emphasis added).

44.     The filing of a bankruptcy case is effectively a transfer of all of the Debtor's assets to the bankruptcy estate and change in the character of the business and, as such, requires the affirmative consent of all of the Debtor's members. Moreover, the Debtor is attempting to effectuate a sale of substantially all of its assets and property and has changed the character of the business and affairs of the Company.

45.     Here, Bonnie LePage caused the Debtor to file bankruptcy without the affirmative vote or written consent of the Trusts. Any anti-alienation provisions contained in the Operating Agreement are invalid. 11 U.S.C. § 541(c)(1) (see also, *In re Dixie Management, LP,* 2011 WL 1753971 (Bankr. W.D. Ark. May 9, 2011); *Spain v. Williams (In re Williams)*, 455 B.R. 485 (Bankr. E.D. Va. 2011); *In re Daugherty Constr.*, 188 B.R. 607 (Bankr. D. Neb. 1995); and *In re Ellis*, 2011 Bankr. LEXIS 4169 (Bankr. S.D. Ind. Oct. 27, 2011)). Therefore, the Bankruptcy Case was filed without proper authority and must be dismissed.[2]

---

[2] If one were to accept the Debtor's argument that the case was filed with requisite authority and a lack of unanimity, at face value, one could surmise that the Nicholson

46.     Obviously, Bonnie LePage caused such filing with the stated intent of transferring the Debtor's profitable enterprise to her son Scott and daughter-in-law, Suzanne, and to avoid the debt owed by the Debtor to the Nicholson Family or relationship as equity members.

47.     "Whenever a court finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition.'" *In re Comscape Telecommunications, Inc.*, 423 B.R. at 830 (citing cases), quoting *Price v. Gurney,* 324 U.S. at 106.  This case is no different.  The Bankruptcy Case must be dismissed.

> **(b)     This Court must dismiss this case because there is no reasonable likelihood of success.**

48.     Section 1112(b) of the Code states "[…] on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate"  Subsection 1112(b)(4) further enumerates that "cause" for purposes under the section includes "(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of

---

family could file a bankruptcy on behalf of the real estate holding company without unanimity and move to reject the lease with the Debtor.

rehabilitation; […] (M) inability to effectuate substantial consummation of a confirmed plan."

49.     In this case, the Debtor's sole purpose is to sell itself to the LePage family to the detriment of the Nicholson family.  The Debtor has no viable means or intent for reorganization.  **Plainly stated, there is no reason for this Bankruptcy Case to continue and dismissal is warranted under the circumstances.**

### (c)     This Court must dismiss this case for cause.

50.     Section 1112(b) of the Code states "[…] on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate"  Subsection 1112(b)(4) includes a non-exhaustive list of what constitutes "cause" for purposes of dismissing a case.  *In re Gucci*, 174 B.R. 401, 403 (Bankr. S.D.N.Y. 1994).  Here, this Bankruptcy Case is nothing more than a two-party dispute between the LePage family and Nicholson family over issues that are already being litigated in the Oakland County Circuit Court.

51. The following facts support the conclusion and weigh in favor of finding that the Bankruptcy Case was filed in bad faith and must be dismissed for cause:

➢ The Bankruptcy Case was filed without proper authority as discussed *supra*;

➢ This case was filed on the eve of a determination of the Trust's motion for summary disposition with Judge Michael Warren in the Oakland County Circuit Court;

➢ There is no reasonable basis for belief that a reorganization is conceivable;

➢ The Debtor thinks it appropriate to attempt to sell itself to an insider for $2.1 million, which, is nearly equivalent to the amount of money the LePage family has been wrongfully removing from the Debtor from 2019 through the Petition Date;

➢ The Debtor had ample opportunity to litigate the matters presented to this Court in Oakland County Circuit Court. Instead, the Debtor has attempted to use this Court as its personal appellate court in a brazen attempt at forum shopping; and

➢     The Debtor is abusing the integrity of the bankruptcy system as a whole and demonstrably attempting to cause harm to the Trusts through the filing of the Bankruptcy Case.

### B.     Abstention and Termination of the Automatic Stay

52.     In the event the Court declines to dismiss the Bankruptcy Case, the Trusts alternatively seek this Court's abstention from the Bankruptcy Case along with termination of the automatic stay.

53.     Abstention is generally described as either permissive or mandatory.

54.     Permissive abstention is granted at the discretion of the court; mandatory abstention is required.

55.     Section 1334(c) of Title 28, United States Code is commonly referred to as the abstention statute. The authority for permissive abstention is found at 28 U.S.C. § 1334(c)(1); for mandatory abstention, 28 U.S.C. § 1334(c)(2) controls.

56.     Section 305(a)(1) also provides for permissive abstention in the form of suspension of a bankruptcy case at the court's discretion.

57.     Regardless of whether permissive abstention under § 305(a)(1) or 28 U.S.C. § 1334(c)(1) or mandatory abstention under 28 U.S.C. § 1334(c)(2) is granted, the Trusts also request termination of the automatic stay in conjunction with abstention so that the State Court Litigation may continue. Without termination of the stay, abstention would have little practical effect.

20

**(1)     Cause exists to terminate the automatic stay.**

58.     The Trusts also seek termination of the automatic stay in coordination with the suspension of all proceedings in the Bankruptcy Case.

59.     The termination of the automatic stay would allow the Trusts to continue the State Court Litigation against the Debtor.

60.     Pursuant to 11 U.S.C. §362(d)(1)[3], the Bankruptcy Court may terminate the automatic stay "for cause." "Cause" includes allowing a pending action to proceed to completion before another tribunal. *In re Garrison*, 5 B.R. 256, 258 n2 (Bankr. E.D. Mich. 1980).

61.     As a court of equity, this Court is empowered to respond to the particular facts of this case and exercise its discretion to terminate the automatic stay and permit the litigation to go forward. *Chrysler LLC v. Plastech Engineered Prods. (In re Plastech Engineered Prods.)*, 382 B.R. 90, 106 (Bankr. E.D. Mich. 2008).

---

[3] Section 362(d) of the Bankruptcy Code provides that

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. §362(d).

62.    In the exercise of this discretion, many courts have relied on the analysis in *Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax Industries, Inc.)*, 907 F.2d 1280 (2d Cir. 1990). In *Sonnax*, the Second Circuit considered the following factors in determining whether there was cause to grant relief from the automatic stay under 11 U.S.C. §362(d)(1) to allow pre-petition litigation to proceed:

> (1) whether relief would result in a partial or complete resolution of the issues;
> (2) lack of any connection with or interference with the bankruptcy case;
> (3) whether the other proceeding involves the debtor as a fiduciary;
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
> (5) whether the debtor's insurer has assumed full responsibility for defending it;
> (6) whether the action primarily involves third parties;
> (7) whether litigation in another forum would prejudice the interests of other creditors;
> (8) whether the judgment claim arising from the other action is subject to equitable subordination;
> (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation;
> (11) whether the parties are ready for trial in the other proceeding; and
> (12) impact of the stay on the parties and the balance of harms.

*In re Expresstrak, LLC,* 2004 WL 3735126 at *8 (Bankr. E.D. Mich. 2004) (citations omitted).    *See also In re Birmingham Cosmetic Surgery, P.L.L.C.*, 2015 WL 1404296 (Bankr. E.D. Mich. 2015).

22

63. Not all of the factors will apply in every case, and the factors are not weighted equally. *Id.* at *2 (citations omitted).

64. The court in *In re Martin,* 542 B.R. 199 (B.A.P. 6th Cir. 2015) considered the following factors to determine whether there was cause to grant relief from the automatic stay under 11 U.S.C. §362(d)(1) to allow pre-petition litigation to proceed: "(1) judicial economy; (2) trial readiness; (3) the resolution of preliminary bankruptcy issues; (4) the creditor's chance of success on the merits; and (5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors." *Martin* at 202 (citing, *inter alia, Garzoni v. K-Mart Corp. (In re Garzoni*), 35 Fed. Appx. 179, 181 (6th Cir. 2002).

65. The *Sonnax* factors include the *Martin* factors.

> **(a)** **Application of the *Sonnax* Factors**
>
> > **(i)** Relief would result in a complete resolution of the issues and the Business Court is a specialized tribunal with the necessary expertise to hear the cause of action in a manner that promotes judicial economy and the expeditious and economical resolution of litigation (*Sonnax* factors 1, 4, and 10).

66. The first, fourth, and tenth *Sonnax* factors support termination of the automatic stay. Allowing the State Court Litigation to proceed would result in a complete resolution of the issues. The Debtor cannot deny this conclusion. Indeed, it was the Debtor's "Managing Partner" Scott LePage, who approached media outlets concurrent with the Bankruptcy Case filing to assure employees, vendors,

23

and the public that the Bankruptcy Case was for the purpose of addressing a two-party dispute. See **Exhibit B**, DetroitNews.com article.

67.     The Business Court is a specialized tribunal. Cases are assigned to the Business Court if any part of the action involves a business or commercial dispute and the amount in controversy exceeds $25,000.00. MCL 600.8035. The Business Court division was statutorily created and mandated to:

> **(a)**     Establish judicial structures that will help all court users by improving the efficiency of the courts.
> **(b)**     Allow business or commercial disputes to be resolved with the expertise, technology, and efficiency required by the information age economy.
> **(c)**     Enhance the accuracy, consistency, and predictability of decisions in business and commercial cases.

MCL 600.8033(3). The Business Court is especially well-suited, and in fact, was created to hear and determine the State Court Litigation.

68.     If the Debtor and the Trusts were required to litigate in this Court, they would have to repeat a year and a half of litigation.

69.     This duplicative litigation is the antithesis of the relief afforded to a debtor under the Bankruptcy Code and contrary to judicial economy.

70.     Requiring the Debtor and the Trusts to litigate in Bankruptcy Court advances no expeditious or economical outcome, and in fact, adds more time and expense to the matter for the Debtor and the Trusts.

71.     Allowing the parties to continue the State Court Litigation in Business Court would result in a complete resolution of the issues by a specialized tribunal established to determine all of the issues raised in the State Court Litigation, in an expeditious and cost-effective manner.

72.     The first, fourth, and tenth *Sonnax* factors favor the Trusts, call for the automatic stay to be terminated, and require that the Motion be granted.

> (ii)     Terminating the automatic stay will not interfere with the Bankruptcy Case or prejudice the interests of creditors (*Sonnax* factors 2 and 7).

73.     The second and seventh *Sonnax* factors support termination of the automatic stay.

74.     Interference with the Bankruptcy Case has to be viewed in context.  The Debtor assured employees, vendors, and the public that the Bankruptcy Case was for the purpose of addressing a two-party dispute See **Exhibit B**, DetroitNews.com article.  "Employees and vendors are all getting paid."  *Id.*

75.     Terminating the stay to allow the Trusts to continue the State Court Litigation will not interfere with the Bankruptcy Case or prejudice the interests of creditors.  The Trusts are the only creditors whose rights are being affected by the Bankruptcy Case and the Trusts are seeking this relief.

76.     The Business Court has all of the tools required to rule on the State Court Litigation and can do so without interfering with the Bankruptcy Case.

25

77.     When the issues involved in the non-bankruptcy case are not core bankruptcy matters, litigating those claims in the court where they originated would not interfere with the bankruptcy case.  *In re Curtis*, 40 B.R. 795, 804-805 (Bankr. D. Utah 1984).

78.     The issues in the State Court Litigation are not core bankruptcy matters.

79.     Thus, terminating the automatic stay to permit the State Court Litigation to continue would not interfere with the Bankruptcy Case.

80.     For the foregoing reasons, the second and seventh *Sonnax* factors favor termination of the automatic stay, which will allow the Bankruptcy Case to continue without interference, and require that the Motion be granted.

> (iii)    The State Court Litigation primarily involves third parties and is at an advanced stage which weighs in favor of terminating the stay (*Sonnax* factors 6 and 11).

81.     The Debtor is not the only defendant in the State Court Litigation. There are three other defendants, all related to the Debtor.

82.     Each of the counts of the Complaint seeks relief against multiple defendants.

83.     Inasmuch as the State Court Litigation had been pending since January 2023, a Motion for Partial Summary Disposition was filed by the Trusts, the Debtor and co-defendants recently filed responses to the Motion for Partial Summary Judgment, and the matter had been under advisement by the Business Court at the

time the Bankruptcy Case was filed, the State Court Litigation is at an advanced stage.

84.     The Debtor's quest to litigate separately, in the Bankruptcy Court, apart from co-defendants who have not filed Bankruptcy Case and are responding to identical allegations, amounts to a selfish misuse of judicial resources.  This is a prime example of duplicative litigation and lack of economy that all parties should strive to avoid and courts discourage.

85.     The sixth and eleventh *Sonnax* factor weigh in favor of terminating the stay, and require that the Motion be granted.

> (iv)    The impact of the stay on the parties and the balancing of harms favor termination of the automatic stay (*Sonnax* factor 12).

86.     This Debtor, as many debtors, is using the automatic stay to shield itself from pre-petition litigation.  The difference in this case is that the Debtor is attempting to masquerade a two-party dispute as a bankruptcy case.

87.     The Debtor's strategy in this case is untenable.

88.     In effect, the Debtor is harming the Trusts by attempting to cause the Trusts engage in duplicative and costly litigation in Bankruptcy Court.

89. The automatic stay allows a debtor to have a breathing spell from creditors,[4] but the debtor must catch his breath and move forward.

90. The impact of the stay and the balancing of harms weighs in favor of terminating the automatic stay to allow the State Court Litigation to continue and requires that the Motion be granted.

> (v)   Cause exists to waive the stay provided in Fed. R. Bankr. P. 4001(a)(3).

91. Federal Rule of Bankruptcy Procedure 4001(a)(3) provides for a 14 day stay of an order granting relief from the automatic stay.

92. Here, there is no cause for the relief to be stayed.

93. The delay resulting from application of Fed. R. Bankr. P. 4001(a)(3) only serves the purpose of allowing the Debtor to continue to impede the State Court Litigation.  Cause exists for the relief to be effective immediately.

### (2)   Suspension of the Bankruptcy Case under 11 U.S.C. § 305(a)(1)

94. Section 305(a)(1) provides for the suspension of the Bankruptcy Case in its entirety.

> The court, after notice and a hearing, … may suspend all proceedings in a case under this title, at any time if…the interests

---

[4] *In re Holly's Inc.*, 140 B.R. 643, 685 (Bankr. W.D. Mich. 1992) ("the automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors." (quoting H.R. Rep. No. 95-595, reprinted in 1978 U.S.C.C.A.N. 5963, 6296-97)).

> of creditors and the debtor would be better served by such
> …suspension….

11 U.S.C. § 305(a)(1).

95.     The factors to be evaluated for suspension or dismissal of a bankruptcy

case under § 305(a)(1) are the same. *Packard Square*, 586 B.R. at 865-866 (citation

omitted); *Fortran Printing*, 297 B.R. at 94.

96.     The application of the factors to the facts of the Bankruptcy Case is set

forth in section **V.A.(1)**, above.

97.      If all proceedings in the Bankruptcy Case were suspended, services

provided to the Debtor in the State Court Litigation would not have to be repeated

in the Bankruptcy Case.  The Debtor could preserve its resources, creditors would

have time to decide whether to continue their relationship with the Debtor, and the

litigation commenced by the Trusts one and a half years ago would not have to be

duplicated by the Trusts in the Bankruptcy Case. The suspension of all proceedings

in the Bankruptcy Case would be in the best interests of the Debtor and its creditors.

98.     The court must suspend all proceedings in this case under § 305(a)(1).

**(3)     Abstention should also be granted under 28 U.S.C. § 1334(c).**

99.     Section 1334(c) of Title 28, United States Code governs abstention.

> (1) Except with respect to a case under chapter 15 of title 11,
> nothing in this section prevents a district court in the interest of
> justice, or in the interest of comity with State courts or respect
> for State law, from abstaining from hearing a particular

proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(1-2).

> **(a) The doctrine of permissive abstention (28 U.S.C. § 1334(c)(1)) requires the court to grant the Trusts' Motion and abstain from this case, including, but not limited to, abstention from any motion to sell the Debtor's assets.**

100. Permissive abstention applies to core and non-core proceedings. *In re River City Resort*, 2019 WL 2482871 at *2 (Bankr. E.D. Tenn.)(May 17, 2019)(citations omitted).

101. In determining whether abstention is appropriate, courts will consider a non-exhaustive list that includes 13 factors:

> (1) the effect or lack of effect on the efficient administration of the estate if a court abstains; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C.A. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state

30

court with enforcement left to the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; (12) the presence in the proceeding of non-debtor parties; and (13) any unusual or other significant factors.

*Palltronics, Inc. v. PALIoT Solutions, Inc. (In re Lighting Technologies, Inc.)*, 647 B.R. 76, 101 (Bankr. E.D. Mich. 2022)(citations omitted); *Hoffman v. Ondrajka (In re Ondrajka)*, 657 BR 217, 228 (Bankr. E.D. Mich. 2024)(citations omitted); *Rachmale v. Conese*, 515 B.R. 567, fn 8 (Bankr. E.D. Mich. 2014).

102.   The factors applied to this case weigh in favor of abstention.  Inasmuch as the Bankruptcy Case is essentially a two-party dispute between the Debtor and the Trusts,  it appears that the effect of abstention on the administration of the estate would be minimal; the issues in the State Court Litigation are all and only state law issues; the State Court Litigation has been pending since January 2023 and a Motion for Partial Summary Disposition had been filed by the Trusts and responded to by the Debtor, with the Business Court having taken the dispositive relief under advisement; apart from the Bankruptcy Case, there is no federal law basis for jurisdiction of the State Court Litigation; the burden imposed on the bankruptcy court by declining to abstain is significant because the Debtor would be duplicating more than one and a half years of Business Court litigation; the Debtor's motivation in filing the Bankruptcy Case is to avoid what it must perceive as an unfavorable

31

jurist in state court; there is no right to a jury trial in the Bankruptcy Case; there are three other defendants in the State Court Litigation, and each of the counts in the Complaint seeks relief against all of the defendants; and the Debtor approached media outlets concurrent with the Bankruptcy Case being filed to assure employees, vendors, and the public that "it's business as usual" for the "profitable company." **Exhibit B**, DetroitNews.com article. The Debtor is not in financial distress and does not need to reorganize. The Bankruptcy Case was filed to avoid an adverse ruling from the state court.

103.   This Court must exercise its discretion to abstain from the Bankruptcy Case in the interests of justice, comity with State courts, and respect for State law. Abstention under 28 U.S.C. § 1334(c)(1) is appropriate and the Motion must be granted.

> **(b)    The doctrine of mandatory abstention (28 U.S.C. § 1334(c)(2)) applies to the Bankruptcy Case and requires the Court to grant the Trusts' Motion and abstain from this case, including, but not limited to, any motion to sell the Debtor's assets.**

104.   "[F]or mandatory abstention to apply…, there must be a timely motion by a party to that proceeding, and the proceeding must: (1) be based on a state law claim or cause of action; (2) lack a federal jurisdictional basis absent the bankruptcy; (3) be commenced in a state forum of appropriate jurisdiction; (4) be capable of timely adjudication; and (5) be a non-core proceeding." *Hoffman v. Ondrajka*, 657

B.R. at 222, quoting *Lindsey v. Dow Chemical Co. (In re Dow Corning Corp.)*, 113 F.3d 565, 570 (6th Cir. 1997).

105.    This Motion is filed timely.  At two weeks old, the Bankruptcy Case is in its infancy.  The State Court Litigation is based solely on issues of state law; there is not any federal basis for jurisdiction; the State Court Litigation was commenced in January 2023; and if this Court abstains and grants relief from the automatic stay, it is expected that the state court will issue its opinion on the Motion for Partial Summary Judgment (under advisement at the time the Bankruptcy Case was filed) without haste.

106.    The State Court Litigation exists (and existed) prior to and independently of the Bankruptcy Case.  Thus, the State Court Litigation did not "aris[e] under title 11." The State Court Litigation does not contain a cause of action "created or determined by a statutory provision of title 11."  *Hoffman v. Ondrajka*, 657 B.R. at 223 (citations omitted).  Nor did the State Court Litigation "aris[e] in a case under title 11."  There are no counts in the Complaint "that, by their very nature, could arise only in bankruptcy cases."  *Hoffman v. Ondrajka*, 657 B.R. at 223 (citations omitted).

107.    These two categories of claims, "arising under title 11" and "arising in a case under title 11," are considered "core" proceedings under 28 U.S.C. §§ 157(b)(1) and 157(b)(2). *Hoffman v. Ondrajaka*, 657 B.R. at 223-224, quoting

33

*Allard v. Coenen (In re Trans-Industries, Inc.)*, 419 B.R. 21, 27 (Bankr. E.D.Mich. 2009)(citations omitted).

108.   To determine "related to" jurisdiction, "[t]he usual articulation for the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy....An action is related to bankruptcy if the outcome could alter the debtor's rights [or] liabilities and which in any way impacts upon the handling and administration of the bankrupt estates." *Hoffman v. Ondrajaka*, 657 B.R. at 224 (citations omitted).

109.   Without question, the State Court Litigation can only be "related to" a case under title 11."

110.   As this Court has only "related to" jurisdiction over the State Court Litigation, those State Court Litigation claims are "non-core." Any argument by the Debtor to the contrary would be disingenuous.

111.   Mandatory abstention under 28 U.S.C. § 1334(c)(2) is required in this case and the Motion must be granted.

**C.     Termination of Automatic Stay**

112.   In the event the Court declines to dismiss the Bankruptcy Case and declines to grant abstention along with relief from the automatic stay, the Trusts

34

alternatively seek termination of the automatic stay to continue the State Court Litigation.

113.   The argument for termination of the automatic stay is set forth in its entirety in section **V.B.(1)**, above and will not be repeated here.

114.   As set forth above, there is good cause to terminate the automatic stay to allow the Trusts to continue the State Court Litigation and the Motion must be granted.

## VI.   Statement of Concurrence Sought

115.   In accordance with E.D. Mich. LBR 9014-1(h), concurrence of the Debtor was sought; however, the Debtor declined to concur.

## VII.   Reservation of Rights

116.   This Motion is filed with full reservation of rights, including the right to assert additional, supplementary, and/or amended relief based on events, information, and/or documents. The Trusts also reserve the right to raise additional issues, authority, and arguments at any hearing, or in any further briefing, on the Motion, or any other matter, in the Bankruptcy Case or any Court of competent jurisdiction, and to take any action to which they may be entitled under the Bankruptcy Code or other applicable law. Without in any way limiting the foregoing, the Trusts' rights are expressly reserved.

## VIII. Conclusion

WHEREFORE, the Trusts request that this Honorable Court grant the relief requested in this Motion along with any further relief as is deemed appropriate.

Respectfully submitted,
**STEVENSON & BULLOCK, P.L.C.**

By: /s/ Charles D. Bullock
Charles D. Bullock (P55550)
Elliot G. Crowder (P76137)
Kimberly Bedigian (P54812)
Counsel for the Mary E. Nicholson Trust
u/a/d January 14, 1994 and the Michael
Nicholson Trust u/a/d March 17, 1997
26100 American Drive, Suite 500
Southfield, MI 48034
Phone: (248) 354-7906
Facsimile: (248) 354-7907
Email: cbullock@sbplclaw.com
Email: ecrowder@sbplclaw.com
Email: kbedigian@sbplclaw.com

Dated: August 19, 2024

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION - DETROIT

**IN THE MATTER OF:**

Eton Street Brewery, LLC

Debtor.

Bankruptcy Case No. 24-47188
Hon. Mark A. Randon
Chapter 11

## ORDER GRANTING MOTION TO DISMISS

This matter came before the Court on the Mary E. Nicholson Trust u/a/d January 14, 1994 and the Michael Nicholson Trust u/a/d March 17, 1997 (collectively, the "Trusts") Motion to Dismiss, or Alternatively, Abstain from All Proceedings in this Case and Terminate the Automatic Stay and Waive the Stay Provided in Fed. R. Bankr. P. 4001(a)(3), or Alternatively, to Terminate the Automatic Stay and Waive the Stay Provided in Fed. R. Bankr. P. 4001(a)(3) (the "Motion," doc. no. __). Required parties were served with notice of the Motion, including the deadline for response. No response to the Motion was timely filed, and in accordance with E.D. Mich LBR 9014-1(d), a certification of no response has been filed. The Court has reviewed the Motion and other pertinent pleadings and is advised in the premises.

NOW THEREFORE IT IS HEREBY ORDERED that the Motion is granted and the bankruptcy case is dismissed pursuant to 11 U.S.C. §§ 305(a)(1) and 1112(b).

1

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION - DETROIT

**IN THE MATTER OF:**

Eton Street Brewery, LLC

                  Debtor.

Bankruptcy Case No. 24-47188

Hon. Mark A. Randon

Chapter 11

---

## NOTICE OF MOTION TO DISMISS, OR ALTERNATIVELY, ABSTAIN FROM ALL PROCEEDINGS IN THIS CASE AND TERMINATE THE AUTOMATIC STAY AND WAIVE THE STAY PROVIDED IN FED. R. BANKR. P. 4001(a)(3), OR ALTERNATIVELY, TO TERMINATE THE AUTOMATIC STAY AND WAIVE THE STAY PROVIDED IN FED. R. BANKR. P. 4001(a)(3)

Mary E. Nicholson Trust u/a/d January 14, 1994 and the Michael Nicholson Trust u/a/d March 17, 1997 have filed papers with the Bankruptcy Court requesting Dismissal, or Alternatively, Abstention from All Proceedings in this Case and Terminating the Automatic Stay and Waiving the Stay Provided in Fed. R. Bankr. P. 4001(a)(3), or Alternatively, to Terminate the Automatic Stay and Waive the Stay Provided in Fed. R. Bankr. P. 4001(a)(3).

**<u>Your rights may be affected.</u> You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

If you do not want the court to grant the relief requested, or if you want the court to consider your views on the relief requested, on or before September 3, 2024, per this Court's Order Setting Briefing Schedule (doc. no. 81), you or your attorney must:

1. File with the court a written response or an answer, explaining your position at:[1]

United States Bankruptcy Court

---

[1] Response or answer must comply with Fed.R.Civ.P.8(b), (c), and (e).

1

211 W. Fort Street
Detroit, Michigan 48226

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above. All attorneys are required to file pleadings electronically.

You must also mail a copy to:

Stevenson & Bullock, P.L.C., 26100 American Dr., Ste 500, Southfield, MI 48034

Office of the U.S. Trustee, 211 W. Fort St., Ste 700, Detroit, MI 48226

2. If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time and location of the hearing.

If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.

Respectfully submitted,
**STEVENSON & BULLOCK, P.L.C.**

By: /s/ Charles D. Bullock
Charles D. Bullock (P55550)
Elliot G. Crowder (P76137)
Kimberly Bedigian (P54812)
Counsel for the Mary E. Nicholson Trust u/a/d January 14, 1994 and the Michael Nicholson Trust u/a/d March 17, 1997
26100 American Drive, Suite 500
Southfield, MI 48034
Phone: (248) 354-7906
Facsimile: (248) 354-7907
Email: cbullock@sbplclaw.com
Email: ecrowder@sbplclaw.com
Email: kbedigian@sbplclaw.com

Dated: August 19, 2024

2

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION - DETROIT

**IN THE MATTER OF:**

Eton Street Brewery, LLC

Debtor.

Bankruptcy Case No. 24-47188
Hon. Mark A. Randon
Chapter 11

## CERTIFICATE OF SERVICE

Charles D. Bullock certifies that on August 19, 2024, *Motion to Dismiss, or Alternatively, Abstain from All Proceedings in this Case and Terminate the Automatic Stay and Waive the Stay Provided in Fed. R. Bankr. P. 4001(a)(3), or Alternatively, to Terminate the Automatic Stay and Waive the Stay Provided in Fed. R. Bankr. P. 4001(a)(3)* was filed electronically. Notice of this filing has been sent to all parties requesting service via the Court's Electronic Case Filing System. Parties may access these filings through the Court's system.

*[Signature on following page.]*

1

**STEVENSON & BULLOCK, P.L.C.**

By: /s/ Charles D. Bullock
Charles D. Bullock (P55550)
Elliot G. Crowder (P76137)
Kimberly Bedigian (P54812)
Counsel for the Mary E. Nicholson Trust
u/a/d January 14, 1994 and the Michael
Nicholson Trust u/a/d March 17, 1997
26100 American Drive, Suite 500
Southfield, MI 48034
Phone: (248) 354-7906
Facsimile: (248) 354-7907
Email: cbullock@sbplclaw.com
Email: ecrowder@sbplclaw.com
Email: kbedigian@sbplclaw.com

2